I,JONES, Judge.
This is an appeal from a judgment ordering Ray E. Lauga, Sr. to pay Madeleine E. Plunkett, $394.33 per month for the support of the minor child, Beau Andrew Plunkett.
On appeal, Mr. Lauga argues that the trial court erred in determining the amount of child support he is obligated to pay. Mr. Lauga also argues the trial court erred in denying his motion to reduce child support. Mr. Lauga seeks a judgment: 1) reversing the judgment of the trial court ordering him to pay $394.33 per month, 2) granting his motion to reduce child support, and 3) allowing him to present evidence of a change in circumstance affecting the cost of day care. Ms. Plunkett answered the appeal and also alleged that the trial court erred in determining the amount of child support due. Ms. Plunkett seeks a judgment: 1) modifying the judgment of the trial court to increase the amount of child support, 2) affirming this amended judgment, and 3) taxing all costs incurred in the trial court and in this appeal to Mr. Lauga.
RFACTS
On September 15, 1993, Beau Andrew Plunkett was born to Ms. Plunkett. On September 16, 1993, Mr. Lauga executed an Acknowledgement of Paternity. On April 15, 1994, Mr. Lauga’s wife, Wanda Lauga filed a petition for Divorce in the 34th Judicial District Court for the Parish of St. Bernard. By virtue of a consent judgment dated April 26, 1994, which was amended by consent on July 28, 1994, Mr. Lauga agreed to pay Mrs. Lauga $190.00 per week in child support for Ryan Jordan Lauga, the couple’s minor ehild.
On April 28, 1994, Ms. Plunkett filed a petition to establish support obligations in the Parish of Orleans. Ms. Plunkett alleged that Mr. Lauga was the natural father of Beau Andrew Plunkett and that there was currently pending in the 34th Judicial District Court for the Parish of St. Bernard a lawsuit to judicially determine that Mr. Lau-ga was the natural father of Beau Andrew Plunkett. Ms. Plunkett later amended the petition and attached a copy of the acknowledgment of paternity form that Mr. Lauga had signed on September 16, 1993. Ms. Plunkett averred that a petition to disavow paternity was pending in the 34th Judicial District Court for the Parish of St. Bernard and that Mr. Lauga had neglected to support Beau Andrew Plunkett.
On October 14, 1994, a trial was held on the issue of child support for Beau Andrew Plunkett. Following the trial Mr. Lauga was ordered to pay Ms. Plunkett $394.33 per month as child support; however, the judgment was not reduced to writing until February 15, 1995, wherein the court signed a judgment ordering Mr. Lauga to pay Ms. Plunkett $91.66 per week commencing on October 15, 1994. Meanwhile, on December 29, 1994, Mr. Lauga filed a motion to reduce child support claiming a change in circumstances as a result of an October 28, 1994 Jjjudgment issued by the 34th Judicial District Court.[1] The motion to reduce child support was heard by the trial court on February 3, 1995 and denied. Following the *1277 rendition of the written judgments, Mr. Lau-ga appealed the judgment ordering him to pay $394.38 per month child support and the judgment denying his motion to reduce child support.
DISCUSSION AND LAW
In his first assignment of error Mr. Lauga argues that the trial court erred in not recognizing a prior Judgment of the 34th Judicial District Court for the Parish of St. Bernard when it computed the amount of child support owed by Mr. Lauga for the support of Beau Andrew Plunkett.
A review of the record supports Mr. Lau-ga’s contention that the trial court failed to take into consideration a judgment of the 34th Judicial District Court for the Parish of St. Bernard ordering Mr. Lauga to pay $190.00 per week for the support of Ryan Jordan Lauga, the child of his marriage to Wanda Lauga.
The trial court gave the following reasons for ordering Mr. Lauga to pay $394.33 per month for the support of the minor child, Beau Andrew Plunkett:
As relates to ... the child support obligation that is owed on behalf of the minor child, Beau Plunkett, based on the testimony, the court finds that the income of Mr. Lauga, $26,000 in salary from his current employer, plus bonus (sic) he receives at the end of the year of $1,500 hundred dollars, for total gross annual income of $27,500 and that divided by 12 gives him a monthly gross income of $2,291; based on the testimony and of the judgment that Mr. Lauga is currently paying L$75 per week for the minor child from his first marriage, for a monthly total of $322.50 per month, which reduces his gross income to $1,968.50. There is currently in place a judgment in St. Bernard Parish in the matter regarding Ray Lauga and Wanda Lauga, which orders Mr. Lauga to pay a total of $190 per week, which the testimony indicates that amount of money has been for child support and alimony payments made for on (sic) behalf of Wanda Lauga, notwithstanding the fact that the judgment calls the support amount child support. This court is not convinced that Wanda Lauga would be entitled to any alimony pendente lite and does not make a judgment as relates to the current judgment enforced and in effect in St. Bernard Parish, thus the court has looked at Mr. Lauga’s income of $1,968 and deducts from that amount the child support obligation pursuant to the guidelines for the child from the second marriage to be at $336, further reducing his gross income to $1,632 per month. That figure is used to determine the child support that he has to pay for the minor child, the subject of this litigation, Beau. Testimony indicates that Ms. Plunkett earns $22,000 a year, which is a total of $1,833 per month. The combined gross income of both of these parties $3465. Mr. Lauga earns 47 percent of that. The basic child support obligation for the child is $529, plus the testimony indicates that the child care cost for the minor child is $310, adding those two figures together, you get a total of $839. Mr. Lauga’s 47 percent in that works out to be $394.33. The court will order that Mr. Lauga pay that amount in child support, retroactive back to the date of filing....
By utilizing $336.00 per month instead of $190.00 per week as the amount due to satisfy the support obligation for the child from the second marriage, the trial court erred in two regards. First, the trial court erroneously attempted to compute the amount attributable as the child support obligation for the second child without having all interested parties before it. Secondly, the trial court implicitly failed to give full faith and credit to the judgment from the 34th Judicial District Court for the Parish of St. Bernard which had already set the support obligation for the child of the second marriage at $190.00 per week.
The trial court stated that it would not “make a judgment as relates to the current judgment enforced and in effect in St. Bernard Parish.” Yet this is exactly what the court implicitly did when it ignored the judgment ordering appellant to | spay the wife and child of the second marriage $190.00 per week and determined that the child support obligation for the child from the second marriage was $336.00 per month. The fact that *1278 the court only subtracted that amount from Mr. Lauga’s gross income to get an adjusted gross income did not in any way relieve Mr. Lauga of the effect of the judgment from the 34th Judicial District Court. This explains why after paying all of the support obligations legally in effect against him he is left with only $34.79 per week to live on. Thus, while the trial court had no authority to expressly overrule the 34th Judicial District Court for the Parish of St. Bernard on the issue of how much was owed as the support obligation to the child of the second marriage, the assigning of a different amount as the child support obligation for purposes of deciding how much was available for support of the third child had this same effect on Mr. Lauga.
While cognizant of the fact that the judgment of 34th Judicial District Court for the Parish of St. Bernard was a consent judgment, we cannot find any jurisprudence which would allow this court to sanction a total disregard of such a judgment. Clearly, the opportunity for collusion between Mr. Lauga and his wife existed, the evidence was not sufficient for the trial court nor this court to make such a finding. Assuming arguendo that the judgment rendered by the 34th Judicial District Court for the Parish of St. Bernard was a result of fraud and/or collusion, the question of the validity of that judgment should be taken up in the first instance in the court wherein that judgment was rendered, the 34th Judicial District Court for the Parish of St. Bernard.
However, final judgments rendered by Courts of competent jurisdiction are presumed to be valid, and cannot be collaterally attacked. Three Rivers Farm Supply, Inc. v. Louisiana Central Bank, et al, 595 So.2d 351 (La.App. 2nd Cir.1992). By arbitrarily fixing $336.00 as the amount of the support obligation due to parties not even before the court, the trial court erroneously failed to give effect Icto the preexisting judgment of the 34th Judicial District Court for the Parish of St. Bernard ordering Mr. Lauga to pay $190.00 per week for the child support obligation of Ryan Jordan Lauga.
In his second assignment of error, Mr. Lauga argues that the trial court erred in denying his motion to reduce child support without allowing testimony of child care costs available to Ms. Plunkett.
The record does not support a finding that the trial court failed to allow Mr. Lauga to present any testimony that he wished on this issue. The trial court clearly allowed Mr. Lauga to testify concerning his knowledge of this issue. While Mr. Lauga testified that he had called around and located a day care near Ms. Plunkett that charged substantially less than the daycare currently being utilized by Ms. Plunkett, Mr. Lauga failed to submit any proof that the previous costs considered for day care were “unreasonable”. Nor is this court aware of any rule requiring the judge to require payment of the cheapest day care available. Further, since Beau Plunk-ett’s elder brother was already enrolled in the same daycare, it would appear to be unreasonable to require Ms. Plunkett to take Beau Plunkett to a different, less expensive, daycare.
Ms. Plunkett answered the appeal and alleged that the trial court erred by 1) excluding evidence tending to prove that Mr. Lauga had reconciled with his second wife, 2) attributing an incorrect amount to Mr. Lauga’s child support obligation to the children of the first wife, Beverly McDougall Lauga, 3) considering only a portion of Mr. Lauga’s W-2 income, and 4) not considering the day care registration and other miscellaneous costs of the minor child, Beau Andrew Plunkett.
In her appellate brief, Ms. Plunkett failed to brief the issues of whether the trial court erred by attributing an incorrect amount to Mr. Lauga’s child support obligation to the children of the first wife, Beverly McDougall Lauga and/or ^whether the trial court erred by considering only a portion of Mr. Lauga’s W-2 income. Accordingly, per the provisions of Rule 2-12.4 of the Uniform Rules — Courts of Appeal, these issues are deemed abandoned.
In her first assignment of error, Ms. Plunkett argues that the trial court erred by excluding evidence tending to prove that Mr. Lauga had reconciled with his wife.
*1279 A review of the record demonstrates that the trial judge specifically told Ms. Plunkett that she could proffer any evidence she wished to proffer on this issue. In the brief filed with this court Ms. Plunkett acknowledges this fact, but notes that the proffer is not in the record.[2] Nevertheless, Ms. Plunkett argues that the record contains sufficient information for this court to rule that Mr. Lauga had reconciled with his wife. More specifically, Ms. Plunkett relies upon testimony to the effect that Mr. Lauga had just returned from a trip to Disney World with his second wife and that Mr. Lauga was apparently served with pleadings at the residence of his second wife to support a finding that reconciliation had taken place. However, Mr. Lauga testified that no reconciliation had taken place although he was desirous of reconciling with his second wife. None of the parties to the proceedings subpoenaed the wife to testify and we find that the evidence does not support a finding that reconciliation had taken place.
The final issue presented by this appeal is whether the trial court erred by not considering the day care registration and other miscellaneous costs of the minor child, Beau Andrew Plunkett.
La.R.S. 9:315.4 specifically requires that net child care costs must be added to the basic child support obligation. The trial court assessed the total child support obligation for the child as $839.00. Of that amount $529.00 was the “basic |8child support obligation”. To this the trial court added $310.00 for child care costs. This amount only takes into account the monthly tuition due the school. Ms. Plunkett’s testimony that she was also required to pay a $50.00 registration fee was uneontroverted. This $50.00 annual registration fee clearly comprised a portion of the net child care costs and should have been added to the basic child support obligation.
Ms. Plunkett’s argument that the $35.00 per month for morning foods at the day care should also be added to the basic child support obligation has no merit. This amount is most likely considered part of the basic child support obligation since this is an expense that would be incurred whether the child was at home or in daycare.
Both parties to the litigation have requested that this court compute the amount owed as child support. In view of the fact that the record is complete, this court will compute the amount owed as child support and render a judgment.
In order to compute the amount owed by the appellant, we must first determine the “adjusted gross income” for each parent. La.R.S. 9:315(1) defines adjusted income as follows:
“Adjusted gross income” means gross income, minus amounts for preexisting child support or spousal support obligations paid to another who is not a party to the proceedings, or on behalf of a child who is not the subject of the action of the court.
The testimony and documents presented at the trial of the court support the trial court’s findings that Mr. Lauga’s gross monthly income (before any deductions) is $2291.00 and Ms. Plunkett’s gross monthly income is $1833.00. The testimony also supports the trial court’s finding that Mr. Lauga was paying $75.00 per week for the minor child from his first marriage. Pursuant to the provisions of La.R.S. 9:315(1) this amount must be subtracted from Mr. Lauga’s Rgross income to determine Mr. Lauga’s adjusted gross income. The $75.00 weekly payments multiplied by 52 yields 3900.00 per year divided by 12 months yields $325.00 monthly. Subtracting this $325.00 monthly from the $2291.00 monthly results in a monthly adjusted gross income of $1966.00. Pursuant to the provisions of La.R.S. 9:315(1), the $190.00 weekly payments to the second wife for child support and/or spousal support must also be subtracted from the gross income. $190.00 multiplied by 52 yields $9880.00 per year divided by 12 months yields $823.33 monthly. Subtracting this $823.33 from the previously adjusted gross of 1966.00 results in a monthly adjusted gross income of $1142.67. Ms. Plunkett’s gross adjusted income is $1833.00 per month. Per La.R.S. 9:315.8(0 we multi *1280 ply Mr. Lauga’s percentage share of the combined adjusted gross incomes times the total child support obligation to determine what portion of this amount Mr. Lauga is to pay. The combined gross income of both parties is $2975.67. Thus Mr. Lauga’s adjusted gross income constitutes 38 percent of the total amount of income. The basic child support obligation for the child is $459.00. Per La.R.S. 9:315.3 and La.R.S. 315.8 we add the net child care costs to this basic child support obligation to get Mr. Lauga’s total child support obligation. Adding the $310.00 per month tuition plus an additional $4.17 per month for the annual $50.00 registration fee ■for daycare brings the total child support obligation to $773.17. Mr. Lauga’s 38 percent of that amount totals $293.00 monthly multiplied by 12 months equals $3516.00 yearly or $67.62 weekly. This is the amount Mr. Lauga must pay for the support of the minor child, Beau Andrew Plunkett.
Accordingly the judgment of the trial court ordering Mr. Lauga to pay Ms. Plunkett $91.66 per week child support and 47 percent of the cost of health insurance for the minor child, Beau Plunkett is reversed. Based on the figures in the record Mr. Lauga is ordered to pay Ms. Plunkett the sum of $67.62 per week hpas child support for the minor child, Beau Andrew Plunkett and 38 percent of the cost of health insurance for the minor child, Beau Andrew Plunkett.
The parties are to bear their own costs for this appeal.

REVERSED AND RENDERED.

. Mr. Lauga alleged that he had been ordered to pay his second wife, Wanda Lauga $355.00 per month in child support and $470.00 per month in alimony pendente lite and that this order had created a severe hardship on him by greatly reducing his income. However, the testimony at the February 3, 1995 hearing demonstrated that this judgment was nothing more than a clarification of the July 28, 1994 which virtually ordered payment of the same amount.

. Nor does the record contain any evidence that the appellee made any attempts to supplement the record with the proffer.